Smyser, J.
The case of the Union Central Life Insurance Company v. George Morrow and others was submitted to the court upon the pleadings and the evidence. The company alleges that it is an Ohio corporation, and its place of business is in Cincinnati. It sets out a note for $1564.88, dated October 4th 1876, due in five years after date; interest paid to October 4th, 1893; two other notes of $125.19 each, *352 dated July 15th, 1890, and due respectively on the 4th of October, 1894 and 1895; claims there is due something like $1800 on these three notes; and that at the time of the execution of the first note a mortgage was executed by Morrow and wife to secure the payment of that note and the interest thereon. That the two notes of $125.19 each are coupon interest notes, or notes given in payment of interest on that amount; and asks for an accounting, foreclosure of the motgage and sale of the premises.
To this George Mrrrow and John J. Deeds answer, but they make substantially the same claim; so I confine myself to the answer and cross-petition of Morrow. He says:
That prior to the execution of the note first mentioned in the petition and the mortgage therein mentioned, the agent of the plaintiff promised and agreed with this defendant that the plaintiff would advance and loan to this defendant the sum of one thousand dollars, upon the condition that this defendant would execute to the plaintiff his note for fifteen hundred and sixty-four dollars and eighty-eight cents and secure the same by executing to the plaintiff a motgage upon his real estate described in the petition, and in addition thereto take out an insurance policy upon his life in the plaintiff company, upon the defendant’s life, for the sum of twenty-five hundred dollars, and apply all of said sum which said note called for, above one thousand dollars, to-wit: The sum of five hundred and sixty-four dollars and eighty-eight cents, as payment in advance upon said insurance policy for the time said note was to run before maturity, and assign and transfer said insurance policy to the plaintiff as additional and collateral security for said loan, evidenced by said note to be given for the whole amount of said sum of fifteen hundred and sixty-four dollars and eighty-eight cents, and that said sum of five hundred and sixty-four dollars and eighty-eight cents, so advanced and paid upon said policy, and all further payments that should be made thereon by this defendant, and all the profits that accumulated upon said policy, would be applied for the benefit of this defendant as a credit upon said loan, and in event of the defendant's death before the maturity *353 of said loan, then the amount for which said policy was to be issued, to-wit: twenty-five hundred dollars, left after deducting the amount that should be due upon said loan, to be paid to the legal holder of said policy.
“That in pursuance of said agreement this defendant applied to said plaintiff, through said agent, for said loan and insurance, and.said plaintiff, in pursuance thereof, on the fifteenth day of September, A. D. 1876, issued to this defendant its policy of insurance by which said plaintiff, in consideration of said application of this defendant, and of the payment of said sum of five hundred and sixty-four dollars and eighty-eight cents, in hand paid, and the annual premium of one hundred and thirty-one dollars, payable on or before the fifteenth day of September, A. D. 1881, and the like amount on or before the fifteenth day of September of every year during the term of five years from September fifteenth, 1881, unless said premium paid in and profits of said company should amount to said sum of twenty-five hundred dollars, or the defendant’s death occur before that time, assured the life of this defendant for the sum of twenty-five hundred dollars for the term of his natural life, or until the prior maturity, for the benefit of the assured, and agreed to pay the amount of said insurance to the legal holder of said policy at any time when the premiums paid, together with the equitable proportion of the company’s profits.should equal the amount insured, or incase of death of the defendant prior to such maturity, then, within ninety days after due notice and satisfactory proof thereof.
“That on the 4tb day of October, A„ D., 1876, the said plaintiff advanced and loaned to this defendant the said sum of one thousand dollars, and applied and credited this defendant as a payment for five years upon said insurance policy aforesaid, the sum of five hundred and sixty-four dollars and eighty-eight cents, and this defendant executed to it the first note and the mortgage mentioned in the petition, and assigned and transferred to the plaintiff said policy of insurance, and the amount advanced and paid thereon as aforesaid, and all amounts of premium that should thereafter be paid thereon, and all income and profits thereou, as additional and collateral security for said loan, evidenced by said first note mentioned in the petition, with *354 the agreement between the plaintiff and this defendant that all of said money advanced and paid on said policy, and that should be thereafter paid thereon, and all profits thereon, should be applied by th’e plaintiff as a credit in any amount due and remaining unpaid to it upon said loan and note at maturity, and that the amount of said insurance, if the defendant died before maturity, or in case he did not die before maturity, then all payments and profits remaining after paying the amount due on said loan and note, to be paid by the plaintiff to this defendant or his estate,
“This defendant avers that the amount he advanced and paid upon said policy and collateral security, together with the profits thereon, amount to more than what is due on said notes and mortgage mentioned in the petition, and amount to the full amount of said insurance policy, to-wit: Twenty-five hundred dollars, and the same has long since matured. That this defendant has often demanded from the plaintiff a statement of the amount of the payments and equitable proportion of the profits of said company belonging to said policy, and has always been ready and willing and has offered to pay plaintiff any amount due thereon, and has demanded that plaintiff apply and pay out of the amount due on said policy the amount due to it on said note and mortgage mentioned in the petition, and to pay to this defendant the residue, due on said policy of insurance, but that said plaintiff has wrongfully and fraudulently refused to give this defendant any statement as to the amount paid thereon, and the equitable proportion of the profits of said company entitled to be credited thereon, or any statement as to the condition of said company or said policy, and has wrongfully and fraudulently refused to receive anything upon said policy and to apply any part thereof to the payment of the amount owed upon said notes and mortgage mentioned in the petition, or to pay to this defendant anything due him upon said policy,”
He denies that there is anything due the plaintiff, and demands that there be an application by way of payment and satisfaction of the indebtedness sued upon by the plaintiff, and that out of this twenty-five hundred dollars he have judgment for the residue.
*355 To this there is a reply, which, in substance, admits that there was insurance for which the defendant is indebted, and asking for judgment, as is the petition prayed for.
The proof offered by Mr, Morrow was substantially this: That the agent came to see him; agreed to make a loan,but that the company would only loan him a thousand dollars on condition that he insured his life for the sum of twenty-five huundred dollars in the company; that that was to be payable in ten annual payments, and was to mature, by reason of the annual premiums that he would pay and the profits that would arise upon the policy, in probably fifteen or eighteen years; and that he was to be credited upon this money that the company loaned him out of that fund. The company, of course, denies this; say that they had issued a policy; that the policy was lapsed for non-payment of premium, and that it had not matured in any event, Substantially, that is the evidence. We are met right at the outset by an objection on the part of the company to the testimony of Mr. Morrow on the ground that it contradicts, or tends to contradict and vary a written instrument, and therefore is not competent. We do not take that view of this testimony, because the contention of Mr. Morrow is that payment of this claim that is now sought by the company to be enforced against him, was to be made, and was in fact made, in a certain way; and that there is nothing due, or only a certain amount probably. His contention is that there is nothing due; that on his life insurance policy he is entitled and has earned enough to be applied to the payment of this loan, and pay it entirely, and there be a residue for him.” So^that we do not think that that objection is well taken. On the other hand it is contended that some evidence that is here by way of deposition is improperly admitted; that the court should not receive it. We heard it under objection. It must be borne in mind that notice was served"upon Mr, Morrow to produce certain *356 documents. ;aTrue, he says he has not got them; that he has made searclfjand cannot find them. The chief objection, however, is to the admission of an exhibit attached to a deposition, — a copy of a notice which it is claimed was sent to Morrow. This deposition of Clark was taken, who has been treasurer of this company since 1888; he was cashier prior to that, from 1879 to 1888; and prior to that he was there in a clerical capacity. He is first asked what notes, if any, Morrow gave. He tells. He is asked this question:
“State whether you had a printed form of notice of the approaching maturity of premium notes in use at that time?”.
Having given the date of maturity of the Morrow notes.
“Answer: The company has always had a printed form of notice which it has sent to the policy-holder prior, to the maturity of his note given for premium’’.
“Q. Please look at the printed form of notice which I hand yon, and state whether it is substantially the same as that employed at or shortly before the approaching maturity of the two notes to which you have referred.”
There is an objection to that.
“Answer: The form is substantially the same as that in use in 1884 and many years prior thereto.”
Technically, this might be objectionable; but it surely was competent to ask this witness if they had a form. He might have refreshed his recollection by looking at the books, and if he could testify from memory, could have stated the contents of the form in use at that time. We think there was no error in it.
The next question:
“Please state what you know as to the sending of a notice in this form to Mr, Morrow on the approaching maturity of the first of the two notes to which you have referred.
“Answer: This form of notice was sent to George Morrow, addressed to him at Outville, Ohio. It was sent under date of February 27th 1884.” •;
*357 It was perfectly competent, because one of the contentions in this case was that the company had been in the habit of notifying Morrow as his notes would mature,or his premiums would mature when there was no note given; and tthat in this instance no notice had been given him, and therefore he was entrapped or lulled into silence or security, believing that his policy would not lapse or become forfeited for non-payment, and that therefore, this company ■ought not to avail itself of the right to insist upon a forfeiture because it had failed in that regard, That was one of the contentions between the parties, the company contending that it did notify him. It was competent for the company to show, by one who was in a position to know, that this notice had been sent. In this regard we find no error in the admission of this testimony.
It is urged in behalf of Mr. Morrow that no forfeiture of this policy is provided for in the policy itself. We quite agree with counsel; but this company is not insisting upon a forfeiture, but it is an abandonment of insurance. A policy may become lapsed by reason of non-payment of premiums. It is not strictly a forfeiture. In 1876 this contract was entered into. It is urged upon us that the note, the mortgage, the contract for insurance, and the insurance that was issued in pursuance thereof, constitute one transaction, and must be considered together. We think that is true; but the subject-matter about which they are contracting is divisible. They are contracting on the one hand for a loan of money, and that is to be secured by a mortgage ■upon real estate. On the'oiher hand a contract is being ■entered into for life insurance that is to be paid in a certain ■way; and right there, these two subject-matters of the contract diverge except in one respect only, and that is that ithe condition of the mortgage shall become broken — or *358 shall become due rather, in the event of the death of Morrow before the time fixed for the maturity of the note, to-wit: The five years. It seems that at that time this company gave Morrow a thousand dollars in money. They took, a fifteen hundred dollar note. It íb also suggested to us that usury appears. It is sufficient to observe that usury is not plead. Usury must be plead in Ohio, except one-case in 29 Ohio State 587, where, upon the face of the petition, without answer being made, it is apparent that there is usury, under the provision of the code, the serial numbe of which I have not in mind now, the court will enter-judgment for the amount that appears to be due, the court will, sua sponte, consider usury, and render judgment for the proper amount. But, in this case, it does not appear upon the claim sued on. It is not apparent here that usury is embodied in this contract. So that that contention is not well taken. It might be observed further, ac-. cording to 25 Ohio St., 413, the case of Kilgore v, Dempsey, in order to make usury available it must appear that it was present at the inception of the contract. Any subsequent arrangement, agreement or contract that embraces usury will not relate back to the original contract,and taint it if usury was not present at the inception of the contract.
So if that were plead, we would say from the evidence-before us that we could not find usury here,
Stripped of everything, what is the defendant’s claim here? He admits that he got a thousand dollars. He gave a note for five hundred and sixty-four dollars. He was to have the profits upon his policy, and to pay premiums-on a twenty-five hundred dollar life insurance policy, and' that was”all to be credited upon this loan of a thousand dollars.®!.We do not think that that was intended, and this-evidence does not tend to show anything of the kind. Why, for five hundred ^dollars, if he had died the day after this-policy took effect/he would have had an estate of thirty- *359 five hundred dollars out of this company; because they gave him a thousand dollars. It is true, he was to pay it back, but he would have had in money thirty-five hundred dollars. We do not think that that was the meaning. We think that the company insisted that he should take out insurance; they were willing to carry him on certain conditions; they were willing to issue him a twenty-five hundred dollar policy payable upon his death in one event, as the policy reads. What would they have received? If he had died at any time during the five years, he would have been entitled to twenty-five hundred dollars. What had he paid out? He had not paid out, in money, anything. Absolutely nothing.
It runs along until 1880, when nothing appears to have been said about this mortgage, or the note of fifteen hundred dollars, but this insurance was kept up and annual payments made until 1883, and these notes were given. This policy does provide that it may lapse for non-payment. The notes that he gave (which would be possibly a new contract) at that time provide for the same thing: That on failure to pay a note for premium,-the policy shall become null and void, and without notice to him. After’ 1883, he paid no further installment upon his life insurance policy. The company,as it appears here, cancelled it, as it had a right to do, and had-a right to do without notice. They probably did not notify him that it was cancel-led; but we think the company did notify Mr. Morrow of the maturity of the note, that he ought to have paid; that would have kept his policy alive. In 1885 his policy had been cancelled; it had lapsed, but the mortgage indebtedness was extended. It is a fact that is cogent evidence here that at the time when Mr. Morrow comes to extend the time ■ of payment of his mortgage indebtedness he does not allude ■ in any way to his policy of insurance. At the’ expiration' of five years, there is another extension (in 1890), and there' *360 is no reference made by Mr. Morrow at that time, and if his contention be true here, his debt was paid. But he is silent. He does not say a word to the company, but, on the other hand, he presents the company a written application in which the usual reference to life insurance policies and so on is stricken out, and the company say to him that if you will furnish us so many notes and so much interest, we will extend the time of your loan for a period of five years; he subscribes to that; the notes are forwarded; two of them are now in suit; he paid some of them without saying a word as to his policy.
Without going any further, we feel from this evidence that it is one of those unfortunate cases, when pay-day has come, the unfortunate debtor is struggling to relieve himself. He thinks he has got something in that policy. It is no answer to plead that the company has refused, on demand, to give him a statement, because Mr. Morrow had a remedy open to him. He could have attached to his answer interogatories, requiring the company to answer how much had been accumulated on that policy, assuming that it was in force; and how much was due on that policy, to which he would be entitled to credit each year. Another way it could have been done: The processes of the court are open; he could have gone to Cincinnati where this company is located;could have taken a deposition; could have overhauled the books. It is no answer to say that that would have been burdensome or involved time ór the expenditure of money; you can only establish rights sometimes in that way. He could have gone there and ascertained exactly what was due him. That was not done.
We think that this company acted fairly. It agreed to issue him insurance; and there is a provision in the policy that, after two full payments are made, for non-payment of any future premium, the policy may be surrendered and a *361 paid-up policy had for the premiums that are already paid. He could have availed himself of that. He did not do it. As I said, we think the subject-matter about which they were contracting is divisible. The one was a loan, He got the money. He got twenty-five hundred dollars of insurance paid up. The company were liable to have it to pay in twenty-four hours. They took that risk. In that respect, that was straight life insurance; and the two are not necessarily involved.
Follett & Follett, for Plaintiff in Error.
J. A. Flory, C. W. Miller, and Edward Kibler, for Defendants in Error.
Taking the view that we do of it in respect to this claim made here, the decree will be for the amount claimed in the petition.
By way of supplemental petition, this company seis up the payment of taxes and the assignment to it of a tax certificate. In respect to that, we feel, and so hold, under section 2858, this company could have paid the taxes and prevented a penalty, and we think it ought to have paid them. We do not think, being a lien holder, and in default for payment of taxes as Mr. Morrow was, that this company would have a right to stand by and see the property sold for taxes, and sold so as to put on a penalty, and then acquire title by having an asssignment of that certificate. But for the amount of taxes that it has paid, with simple interest, the company will take a decree in that respect, for the amount paid for taxes directly and what it holds the certificate for by way of assignment,computing the interest at simple interest. We think the penalty ought to be excluded, because we think it was the duty of the plaintiff to see that these taxes were paid,
It was suggested to us that the sale for taxes was irregular. The court is not going to skirmish around for irregularity. Counsel did not offer anything to show irregularity, and we take the sale as being regular in the absence of any proof to the contrary.